NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1368

ADOPTION OF DAVINA (and a companion case[1]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following trial in the Juvenile Court, the judge terminated the father's parental rights to his children, Davina and Michael.[2]  The judge declined the father's request to enter an order for visitation, and the father appeals.  We affirm.

We review a judge's decision not to order posttermination or postadoption visitation with a biological parent for abuse of discretion.  See Adoption of Xarissa, 99 Mass. App. Ct. 610, 623-624 (2021).  In determining whether such visitation is in a child's best interests, the judge must consider whether the

---

[1] Adoption of Michael.  The children's names are pseudonyms.

[2] After the decrees entered, the mother agreed to a stipulation for judgment terminating her parental rights.  The stipulation for judgment contemplated an open adoption agreement and also referenced a posttermination contact agreement providing the mother with visitation.  She is not a party to this appeal.

child has a "significant, existing bond with the biological parent" and whether the child "has formed strong, nurturing bonds" with the preadoptive family.  Adoption of Ilona, 459 Mass. 53, 63-64 (2011), quoting Adoption of Vito, 431 Mass. 550, 563 (2000).  The judge should also weigh "considerations beyond bonding," Adoption of Rico, 453 Mass. 749, 759 (2009), including "other circumstances of the actual personal relationship of the child and the biological parent," id., quoting Adoption of Vito, supra at 562.  Only if postadoption visitation with the biological parent is in the child's best interests does the judge proceed to evaluate whether entering an order instead of leaving visitation to the discretion of the adoptive family is necessary to protect the child's best interests.  See Adoption of Ilona, supra at 65-66; Adoption of Vito, supra at 563.

The record and the judge's findings amply support her determination that posttermination and postadoption visitation with the father would not be in either child's best interests.[3] The father lived with the older child, Davina, for the first

---

[3] We are not persuaded by the father's contentions that the judge ignored evidence or that her reasons for denying the father's visitation request were not sufficiently detailed.  See Adoption of West, 97 Mass. App. Ct. 238, 247 (2020) ("When a trial judge decides not to order visitation, . . . [s]he is not required to make extensive findings if [s]he has already made specific and detailed findings regarding the child's best interests and the determination of parental unfitness" [citation omitted]).

year of her life, but thereafter, the maternal great-grandmother became her legal guardian and primary caregiver. The Department of Children and Families (department) took custody of Michael when he was less than two months old.

Since the department removed the children in 2021, the father has not consistently attended or confirmed virtual or in-person visits with them. The father saw the children in person only twice in three years, with large gaps between both virtual and in-person visits. Both children were negatively affected by the father's behavior during visits. Davina expressed distress and Michael ran away and refused to stay present during visits.

The father asks us to look beyond his lack of significant bonds with the children and argues that children may still benefit from contact with their birth parents even if they have not already formed a strong bond. While we appreciate the father's concern for the children and his desire for them to know him, an order requiring posttermination or postadoption contact is unwarranted here. The children have been living with their preadoptive family since January 2021, when Davina was four years old and Michael was two months old. Both children have "formed strong, nurturing bonds" with the preadoptive parents, and there is "little or no evidence of a significant, existing bond with the biological parent." Adoption of Vito,

3

431 Mass. at 563. Visitation with the father is unnecessary to assist the children in negotiating their transition to adoption. See id. at 564-565.

The father argues that visitation is warranted because of several other circumstances, including that (1) while the children's mother has similar deficiencies in her history, the judge granted her posttermination visitation; (2) the mother was provided the opportunity for an open adoption after the decrees entered, see note 2, supra; (3) the father and mother remain married; (4) the father's sporadic visitation was the result of limitations imposed on him by various treatment facilities; and (5) the preadoptive family is not supportive of contact with the father.

The first three circumstances concern the fairness of the order to the father and are unrelated to the question of the children's best interests. See Adoption of Vito, 431 Mass. at 562 ("an order for postadoption contact is grounded in the over-all best interests of the child, based on emotional bonding and other circumstances of the actual personal relationship of the child and the biological parent, not in the rights of the biological parent nor the legal consequences of their natural relation"). The fourth circumstance, suggesting that the father would have maintained greater contact with the children if not

4

for the "limitations imposed by the various facilities at which he sought treatment," is belied by the record.  When the father's ability to see the children was not limited by incarceration or treatment facilities, he had minimal contact with the department and no contact with the children.  With respect to the fifth circumstance, the judge found that the preadoptive parents would in fact be open to ongoing involvement between the biological parents and the children.

The record substantially supports the judge's conclusion that posttermination and postadoption contact between the father and children would not be in the children's best interests.  The judge did not abuse her discretion in denying the father's request for a visitation order.

Decrees affirmed.

By the Court (Massing, Hand & Smyth, JJ.[4]),

Clerk

Entered:  September 16, 2024.

---

[4] The panelists are listed in order of seniority.

5